1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Michael Ross Johnson, | No. CV-19-01273-PHX-JAT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Michael Ross Johnson's ("Plaintiff") appeal from the Social Security Commissioner's ("Commissioner") denial of his application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. 1). The Court now rules on the appeal.

**I. BACKGROUND**

Plaintiff filed an application for disability insurance benefits on January 26, 2016. (Doc. 11-11 at 21–22 (Ex. 1A at 1–2)). Plaintiff's application was denied at the initial stage, upon reconsideration, and by the ALJ after a hearing. (*Id.* at 45, 54 (Ex. 5A at 4, 13)). However, Plaintiff prevailed on review before the Appeals Council, and the Appeals Council vacated the ALJ's decision and remanded. (*Id.* at 61–62 (Ex. 6A at 2–3)). On remand, the ALJ again denied the claim, and the Appeals Council affirmed on review. (Doc. 11-5 at 34–44 (ALJ's decision); Doc. 1)). Plaintiff then sought review in this Court. (Doc. 1).

### a. The Disability Determination

A claimant seeking social security benefits must show he "is under a disability." 42 U.S.C. § 423(a)(1)(E). If the claimant shows he suffers from a medically determinable physical or mental impairment that prevents him from engaging in "substantial gainful activity," the claimant is disabled. *Id.* § 423(d)(1)–(2). An Administrative Law Judge ("ALJ") goes through a five-step process to determine whether the claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If the ALJ determines that the claimant is not disabled at any step, the analysis ends. *Id.* § 404.1520(a)(4). The claimant has the burden of proving disability through steps one to four, and the burden shifts to the Commissioner at step five. *See Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

At step one, the ALJ must determine whether the claimant is "doing substantial gainful activity." § 404.1520(a)(4)(i). If not, the ALJ must proceed to step two and determine if the claimant has a physical or mental impairment or a combination of impairments that are "severe." *Id.* § 404.1520(a)(4)(ii). If the ALJ finds severe impairment, the ALJ must proceed to step three to analyze whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ must then assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ determines whether the claimant can still do "past relevant work" given the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step where the ALJ evaluates whether the claimant "can make an adjustment to other work" in light of the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

### b. The ALJ's Decision

Here, the ALJ denied Plaintiff's claim for disability benefits because the ALJ concluded that Plaintiff could do past relevant work. (Doc. 11-5 at 43–44). The ALJ

found that Plaintiff did not engage in substantial gainful activity during the asserted period of disability. (*Id.* at 36). At step two, the ALJ found that Plaintiff "has the following severe impairments: rheumatoid arthritis, immune deficiencies, atrial fibrillation, mood disorder, and post-traumatic stress disorder (PTSD)." (*Id.*) The ALJ found that Plaintiff's intermittent migraines are not a severe impairment. (*Id.*).

At step three, the ALJ concluded that Plaintiff's severe impairments, considered singularly or in combination, "do[] not meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). In performing the RFC analysis, the ALJ considered the opinions of various medical providers that had reviewed Plaintiff's conditions. (*Id.* at 38, 40–43). After reviewing all the evidence in the record—including Plaintiff's testimony, the objective medical evidence, and the opinions of the medical providers—the ALJ concluded that Plaintiff had only mild limitations. (*See id.* at 38). Given this finding, at step four, the ALJ determined that Plaintiff could perform past relevant work as a claims processor. (*Id.* at 43). Thus, the ALJ determined that Plaintiff was not entitled to disability benefits. (*Id.* at 44).

## II.   LEGAL STANDARD

An ALJ's decision to deny a disability benefits claim may be reversed only when the decision "is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citation omitted). "The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant*, 753 F.2d at 1453 (citation omitted). The ALJ, as the trier of fact, "must resolve conflicts in the evidence, and if the evidence can support either outcome, the [C]ourt may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). In fact, it is the ALJ's responsibility to resolve conflicts in medical testimony, determine credibility, and resolve ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989). In doing so, the ALJ "is entitled to draw inferences logically flowing from the evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The Court must not reweigh the evidence, but instead, the Court's limited task is to review the ALJ's decision to ensure it is free from legal error and supported by substantial evidence. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987).

**III. ANALYSIS**

Plaintiff argues that the ALJ erred because Plaintiff asserts the ALJ improperly weighed an opinion of Plaintiff's examining psychologist, the ALJ failed to consider Plaintiff's bilateral tremor in the severe impairment analysis, and the ALJ did not resolve a conflict between the vocational expert's testimony in the first, vacated, hearing and the vocational expert's testimony in the second hearing. (Doc. 12).

**a. Weight of Opinion Evidence**

Plaintiff first contends that the ALJ's decision must be reversed and remanded because the ALJ failed to give legally sufficient reasons for giving "partial weight" to Plaintiff's consultative examining psychologist, Dr. Rabara. (Doc. 12 at 4–7). Plaintiff contends that the ALJ erred because the ALJ did not provide a specific reason for partially discounting Dr. Rabara's opinion that Plaintiff has "moderate difficulty interacting appropriately with co-workers and supervisors." (*Id.* at 6).

An ALJ may discount the opinion of an examining psychologist when that opinion is contradicted by the opinion of another doctor and the ALJ provides "specific and legitimate reasons that are supported by substantial evidence" for rejecting the examining psychologist's opinion.[1] *See Ryan*, 528 F.3d at 1198 (citations omitted). When the ALJ credits a non-examining opinion, that is supported by other evidence in the record, and that opinion contradicts the examining psychologist's opinion, there is a specific and legitimate reason, supported by substantial evidence, to discount the examining psychologist's opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th

---

[1] The agency psychological consultants' opinions contradicted Dr. Rabara's opinion, (Doc. 11-5 at 41; Doc. 11-11 at 32–33); therefore, the ALJ only needed specific and legitimate reasons to partially credit Dr. Rabara's opinion. *Garcia v. Colvin*, 162 F. Supp. 3d 1096, 1103 (D. Or. 2016)

Cir. 1999); *Magallanes*, 881 F.2d at 752–53. Inconsistency between a claimant's testimony and the examining psychologist's opinion is also a specific and legitimate reason for discounting an examining psychologist's opinion. *Morgan*, 169 F.3d at 602–03. Indeed, it is the ALJ's responsibility to determine whether inconsistencies are material and what factors are relevant in evaluating whether to discount the opinion of an examining psychologist. *Id.* at 603.

The ALJ did not err by giving partial weight to Dr. Rabara's opinions. (Doc. 11-26 at 50–58 (Ex. 21F)). The ALJ outlined the inconsistencies between Dr. Rabara's opinion and the evidence in the record as a whole. (Doc. 11-5 at 39–42). The ALJ cited the fact that Plaintiff not only is engaged in a great deal of social activities but also that his treating providers "repeatedly noted the claimant to be cooperative, pleasant, calm, and or [sic] socially appropriate." (*Id.* at 40). Further, both the ALJ and Dr. Rabara himself indicated that Plaintiff was not credible on numerous topics and that Plaintiff overstated his symptoms and impairments.[2] (*See, e.g.*, *id.* at 39–40; Doc. 11-26 at 56–57 (Ex. 21F at 7–8)). This perceived incredulity is especially problematic because Dr. Rabara based his opinions "on a single consultation and limited information." (Doc. 11-26 at 57 (Ex. 21F at 8)). Also, it appears that Dr. Rabara did not review Plaintiff's medical record, (*id.* at 50 (Ex. 21F at 1)),[3] which limits the value of his opinion. *See, e.g.*, *McLemore v. Berryhill*, 727 F. App'x 435, 436 (9th Cir. 2018) ("[T]he opinion of a consulting examiner based on a one-time examination of the claimant with no review of the medical records is of little value." (citing *Reddick v. Chater*, 157 F.3d 715, 727 (9th Cir. 1998))); *Morgan*, 169 F.3d at 602 (noting that an ALJ may discount an examining medical provider's opinion when

---

[2] Specifically, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 11-5 at 39). Thus, the ALJ discredited Plaintiff's testimony because Plaintiff overexaggerated the extent of his impairments, which is what Dr. Rabara also found. Notably, on appeal, Plaintiff did not challenge the ALJ's discounting of Plaintiff's testimony.

[3] In fact, Dr. Rabara reported that the only record he reviewed was a Compensation and Pension Decision Letter, dated July 28, 2016, from the Department of Veteran Affairs. (Doc. 11-26 at 50 (Ex. 21F at 1)). Dr. Rabara noted, in conclusion, "[r]eviewing any available behavioral health treatment records could provide further insights and diagnostic clarification." (*Id.* at 57 (Ex. 21F at 8)).

it is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" and the claimant's "complaints have been 'properly discounted'" (citation omitted)). In short, the inconsistency between the record—including Plaintiff's own testimony and prior statements—and Dr. Rabara's opinion was a specific and legitimate reason that was supported by substantial evidence for partially discounting his opinion.

The ALJ's decision to partially discount Dr. Rabara's opinion is also supported by the ALJ's decision to partially credit the agency psychological consultants' opinions. (Doc. 11-5 at 41). Although the ALJ disagreed with the consultants' finding that Plaintiff's mental impairments were non-severe, the ALJ concluded that these impairments were not disabling "given the rather unremarkable objective signs" of Plaintiff's impairments. (*Id.*). This determination was consistent with the psychological consultants' opinions. The consultants noted, among other things, that "[o]verall, the evidence supports that [Plaintiff] is able to function well socially" and that "[h]e appears to be able to function well interpersonally, when not in disability-seeking settings." (Doc. 11-11 at 32–33). Likewise, as noted above, the ALJ also found that Plaintiff is able to function socially, just as the psychological consultants did. (Doc 11-5 at 39–40). The ALJ's reliance on the psychological consultants' opinions was within the ALJ's responsibility to review the record and resolve any conflicts.

Therefore, the ALJ properly discounted Dr. Rabara's opinion relating to Plaintiff's ability to interact with supervisors and coworkers because the objective medical evidence was inconsistent with this opinion and the agency consultants' opinions contradicted it. It is of no moment that the ALJ did not regurgitate the analysis he outlined earlier in his decision, (Doc. 11-5 at 38–40), in the paragraph in which he discounted Dr. Rabara's opinion, as Plaintiff seemingly contends. (*See* Doc. 12 at 6). In reviewing the ALJ's decision, the Court may "draw inferences" based on the reasoning within the decision as a whole. *Magallanes*, 881 F.3d at 755. In other words, the Court is not limited to the reasoning that appears after the ALJ "recite[s] the magic words, 'I reject [Dr. Rabara]'s opinion.'" *Id.* The ALJ's analysis, read in toto, and the reasonable inferences from that

analysis, provided sufficient specific and legitimate reasons, supported by substantial evidence, for the ALJ's decision to partially discount Dr. Rabara's opinion.

### b. ALJ's Analysis of Bilateral Tremor

Plaintiff argues next that the ALJ's decision must be reversed and remanded because Plaintiff asserts the ALJ did not "properly assess[] the medical evidence related to Plaintiff's tremor at step two."[4] (Doc. 12 at 8). This argument fails, because as the Commissioner notes, (Doc. 17 at 10–11), the ALJ considered the Plaintiff's allegation of tremors within his analysis of Plaintiff's RFC. (Doc. 11-5 at 40). The ALJ specifically stated, "[d]espite [Plaintiff's] allegations of manipulative difficulties and limited lifting, muscle strength as well as grip strength were repeatedly noted as normal." (*Id.* (citing Doc. 11-19 at 71 (Ex. 7F at 272) (noting grip and pinch on both hands had "[n]ormal strength"); Doc. 11-27 at 89 (Ex. 25F at 37) (stating "[g]rip strength and finger abductor strength of both hands is [sic] normal"))). The ALJ also credited the agency doctors' opinions on Plaintiff's physical condition with significant weight. (*Id.* at 41). Part of the doctors' opinions included that Plaintiff's exam only revealed a "'slight to mild action tremor,' which does not even warrant medication treatment, per [Plaintiff's] neurologist (VA Richard Burns, MD 12/14/15)." (Doc. 11-11 at 16 (Ex. 2A at 14); *see also id.* (Ex. 2A at 14) ("[Plaintiff's] handwriting on the ADL forms shows *no* evidence of tremor." (emphasis added))). Finally, the ALJ noted that Plaintiff's activities include "creating art, computer use, ironing, and dusting," which all "require significant manipulative functioning." (Doc. 11-5 at 41). In sum, any error relating to the ALJ's failure to discuss Plaintiff's tremor at step two was harmless because the ALJ considered, and rejected, Plaintiff's allegations and manipulative difficulties based on the record. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

---

[4] Plaintiff also appears to suggest that the ALJ did not properly address Plaintiff's diagnosis of somatic symptom disorder. (Doc. 12 at 8). However, Plaintiff did not develop this argument whatsoever. Therefore, the Court will not evaluate this claim as it is Plaintiff's burden to show that the ALJ erred. *See Eric W. v. Comm'r of Soc. Sec.*, No. C19-5145 RSM, 2019 WL 5103767, at *2 (W.D. Wash. Oct. 11, 2019).

### c. Vocational Expert Testimony

Plaintiff's final allegation of error is that the ALJ did not properly analyze Plaintiff's past relevant work. (Doc. 12 at 10–12). Past relevant work is work that a claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it." 20 C.F.R. § 404.1560(b)(1).

Plaintiff asserts there was a conflict between the testimony of the vocational expert from his first hearing and the testimony of the vocational expert from his second hearing about his positions as an insurance claims processor and glass claims processor. (Doc. 12 at 10–12). As noted above, the Appeals Council vacated the ALJ's first denial of disability benefits, which necessitated a second hearing, in which the second vocational expert testified. Plaintiff contends that the Court should reverse the ALJ's decision and remand because the ALJ must reconcile the asserted conflict. (*Id.* at 12; Doc. 18 at 10–11).

Plaintiff had approximately ten months of experience between the two claims processor jobs. (Doc. 12 at 10). The first vocational expert classified these positions as insurance claims processor, DOT 241.267-018.[5] (Doc. 11-10 at 109). The second vocational expert testified that Plaintiff was a claims processor, DOT 241.362-010. (Doc. 11-5 at 74 (Trans. at 20)).[6] The ALJ, in the decision on appeal to this Court, found that Plaintiff "has past relevant work as a claims processor," consistent with the second vocational expert's testimony. (Doc. 11-5 at 43).

The relevant distinction between the testimony of the two vocational experts is that an insurance claims processor and a claims processor have different scores for the amount of experience required to learn the position, and thus, allow the position to be deemed past relevant work. This score is called a specific vocational preparation rating ("SVP"). The DOT defines SVP as "the amount of lapsed time required by a typical

---

[5] The DOT, the Dictionary of Occupational Titles, is the primary guide that the Social Security Administration uses to classify past relevant work in adjudicating claims. *Johnson v. Shalala*, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995).

[6] The Court notes that the DOT actually refers to DOT 241.362-010 as "claims clerk I" and DOT 241.267-018 as "claim examiner."

worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT App. C. An SVP of 1 or 2 means unskilled work, 3 or 4 is semi-skilled work, and 5 to 9 includes skilled work. SSR 00-4p, 2019 WL 5103767 (Dec. 4, 2000).

The position of claims processor, DOT 241.362-010, SVP 4, requires three to six months of experience to constitute past relevant work. *See* DOT App. C. However, if Plaintiff is properly classified as an insurance claims processor, DOT 241.267-018, SVP 7, as the first vocational expert testified, then he would have needed at least two years of experience for this position to qualify as past relevant work. *See* DOT App. C.

Accordingly, Plaintiff's challenge simply boils down to whether the ALJ properly relied on the second vocational expert's testimony. Plaintiff argues that the inconsistency between the testimony from the first and second hearings must be resolved by the ALJ. (Doc. 12 at 12; Doc. 18 at 10–11). But, Plaintiff's argument is long on explanation of the differences between the two DOT classifications yet short on law.

Nowhere does Plaintiff cite to any legal authority that indicates that the ALJ erred in basing his decision on the second vocational expert's testimony without resolving the contradiction Plaintiff alleges. As noted above, the second vocational expert testified during the second hearing that was conducted after the ALJ's first decision was vacated by the Appeals Council. (Doc. 11-11 at 61–62 (Ex. 6A at 2–3)). When a decision is vacated, it is "officially gone" and "void," and thus, "ha[s] no legal effect whatever." *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002); *see Vacate*, *Black's Law Dictionary* (11th ed. 2019) (defining vacate as "to nullify or cancel; make void; invalidate"). As such, it would be anomalous that an ALJ would be required to resolve inconsistency between the first hearing that was voided and the new hearing, which occurred *because* the first hearing and decision was voided. Moreover, there is no requirement that an ALJ resolve inconsistent testimony from two different hearings. *See Curtis v. Colvin*, No. 3:15-CV-00225-L-BH, 2016 WL 1056682, at *18 (N.D. Tex. Feb.

26, 2016), *report and recommendation adopted*, No. 3:15-CV-225-L, 2016 WL 1047105 (N.D. Tex. Mar. 15, 2016).

At any rate, even if Plaintiff is correct that inconsistency between the two hearings is a ground for reversal, here, Plaintiff has failed to show a genuine inconsistency. As the Commissioner points out, Plaintiff did not provide the entire context of the vocational expert's testimony regarding Plaintiff's claims processor jobs from the first hearing. (Doc. 17 at 15). Although Plaintiff correctly notes that the first vocational expert classified Plaintiff's claims processor positions as DOT 241.267-018, an SVP level 7, the first vocational expert also testified that due to Plaintiff's lack of prior experience in this field, Plaintiff's claims processor positions correspond to "an SVP 3 or 4, possibly." (Doc. 11-10 at 109). Therefore, the vocational expert actually rated Plaintiff's claim processor positions at an SVP 3 or 4.[7] A rating of SVP 3 or 4 is consistent with the second vocational expert's testimony in the second hearing, where he identified Plaintiff's claim processor jobs as DOT 241.362-010, SVP 4, which requires three to six months of experience. Plaintiff's ten months of experience in the claim processor positions is sufficient, and thus, Plaintiff's two claims processor positions constitute past relevant work. Consequently, the ALJ did not err, even under Plaintiff's theory.

**IV. CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.[8]

Dated this 18th day of December, 2019.

James A. Teilborg
Senior United States District Judge

---

[7] An SVP 3 requires 1 to 3 months experience. DOT App. C.

[8] To the extent mandate is required, the judgment shall serve as the mandate.

- 10 -